Filed 11/15/22  P. v. Badue CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>STEVE BADUE,<br><br>        Defendant and Appellant. | A162813<br><br>(San Mateo County<br>Super. Ct. No. 20-SF-010783-A) |

Defendant Steve Badue appeals from a judgment entered after the trial court found him guilty of a number of offenses related to public intoxication and resisting peace officers.[1]  He contends he did not make a valid waiver of his right to a jury trial.  We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The details of defendant's offenses are not germane to the issue before us on appeal.  Suffice it to say that on September 20, 2020, while intoxicated in public, defendant failed to comply with a police officer's directions; struggled against officers trying to take him into custody, causing one of

---

[1] In conjunction with this appeal, appellant filed two petitions for writ of habeas corpus, *In re Steve Badue*, A164311, and *In re Steve Badue*, A164323.  We have denied these petitions by separate orders filed this date.

them to stumble, strike a light pole with her head, and suffer injuries; and spat on an officer's pants and boot.

Defendant represented himself at trial, and he waived his right to a jury trial and elected to be tried by the court. The trial court found him guilty on February 16, 2021 of misdemeanor public intoxication (Pen. Code, § 647, subd. (f));[2] felony delaying or resisting an officer (§ 148, subd. (a)(1)); misdemeanor battery on a peace officer (§ 243, subd. (b)); two counts of resisting an executive officer in the performance of the officer's duties (§ 69), with a great bodily injury enhancement as to one count (§§ 1203 subd. (e)(3), 12022.7, subd. (a)); and resisting and causing serious bodily injury to a peace officer (§ 148.10).

The trial court declared a doubt as to defendant's competency and suspended criminal proceedings on March 10, 2021. (§ 1368.) It appointed a psychologist and a psychiatrist to examine him. Both of them concluded defendant was competent, and the court so found. The trial court sentenced defendant to the low term of two years for violation of section 148.10, causing serious injury to a peace officer, with the other terms either concurrent or stayed.

## DISCUSSION

Defendant contends his waiver of his right to a jury trial was not knowing, voluntary, and intelligent. A criminal defendant has a right to trial by jury under both the federal and state constitutions. (*People v. Weaver* (2012) 53 Cal.4th 1056, 1071; U.S. Const., amend. VI; Cal. Const., art. I, § 16.) This right, however, may be waived by consent of both parties. (*Weaver*, at p. 1071.) To be valid, a defendant's waiver must be " 'knowing and intelligent, that is, " ' "made with a full awareness both of the nature of

---

[2] All statutory references are to the Penal Code.

2

the right being abandoned and the consequences of the decision to abandon it,' ' " as well as voluntary " ' "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, and deception." ' " ' " (*Id.* at pp. 1071–1072, quoting *People v. Collins* (2001) 26 Cal.4th 297, 305.) Defendant contends these standards are not met here because the trial court did not advise him of the mechanics of a jury trial, he did not have the advice of counsel, and he was unable to grasp relevant facts and basic legal concepts, as shown by his meritless motions and the competency evaluations.[3]

The entirely of the colloquy in which defendant waived his right to a jury is as follows:  "[The court]:  Mr. Badue, you indicated that you wanted to waive jury trial and have a court trial; is that correct?  [¶]  Mr. Badue:  Yes, Your Honor.  [¶]  The court:  Okay.  So you know you do have the right to have a jury trial where 12 members of the public hear the evidence and rule on it?  Is that your understanding?  [¶]  Mr. Badue:  Yes, Your Honor.  [¶] The court:  And you wish to waive and give up your right to a jury trial?  [¶] Mr. Badue:  You're the judge and jury, Your Honor.  You decide.  [¶]  The court:  You want me to hear the evidence and not a jury; is that correct?  [¶] Mr. Badue:  Yes, Your Honor.  You are a judge and jury.  You will suffice, yes. [¶]  The court:  Me as judge and jury?  Thank you. [¶]  And do the People waive their right to a jury trial?  [¶]  [The prosecutor]:  We do, Your Honor." (Block capitalization omitted.)

Defendant contends this advisement was inadequate.  Our high court has made clear that there is no specific method to determine whether a defendant has made a knowing and intelligent waiver of a jury trial, and that

---

[3] Although defendant recites that his jury trial waiver was not voluntary, he makes no effort to show it was based on intimidation, coercion, or deception.

in reviewing a waiver, we should look at the totality of the circumstances. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 167 (*Sivongxxay*).) In *Sivongxxay*, the trial court advised the defendant he had a right to a jury of 12 people, that he could participate in their selection, and that in a bench trial, although the burden of proof would remain the same, the judge alone would evaluate the evidence and decide defendant's guilt. (*Id.* at p. 165.) The defendant argued this advisement was inadequate, pointing out that he was a Laotian refugee with no formal education and a limited command of English. And, he contended, he could not have understood what a jury trial entailed unless he received more explanation, such as that the jury must be impartial, that its verdict must be unanimous, or that the trial court must declare a mistrial if there is no verdict. (*Id.* at pp. 166-167.) Our high court rejected this argument, explaining that despite these facts, the defendant was represented by counsel and assisted by a translator; that the defense initiated the request for a court trial; that, after being advised, the defendant said he wanted to give up his right to a jury trial; and that he had prior experience in the criminal justice system, having pleaded guilty to two prior offenses and having signed a waiver in connection with one of those pleas saying he fully understood his right to a jury trial. (*Id.* at p. 167.) And, the court emphasized, "we have never insisted that a jury waiver colloquy invariably must discuss juror impartiality, the unanimity requirement, or both for an ensuing waiver to be knowing and intelligent." (*Id.* at p. 168.) As the court explained, there is no requirement of "any rigid formula or particular form of words that a trial court must use in taking a jury waiver." (*Id.* at p. 169.)

Nevertheless, the court emphasized "the value of a robust oral colloquy in evincing" a valid waiver of a jury trial. (*Sivongxxay, supra*, 3 Cal.5th at p. 169.) To this end, the court offered "general guidance" to ensure a jury

4

trial waiver is knowing and intelligent and to assist in appellate review:  it recommended that trial courts "advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Ibid*.)  The court also recommended that trial courts take additional steps to ensure the defendant understands what the right to a jury trial entails, such as asking whether the defendant consulted with counsel and received an adequate explanation, or by asking the defendant directly if he or she understands the right or has any questions.  (*Id*. at pp. 169-170.)  But, the court emphasized, this guidance is advisory and departing from it will not necessarily render a jury waiver invalid.  (*Id*. at p. 170.)

Very recently, our high court again emphasized " 'the value of a robust oral colloquy,' " but found a colloquy that omitted some of the elements mentioned in *Sivongxxay* to be adequate in the circumstances.  (*People v. Morelos* (2022) 13 Cal.5th 722, 753-754.)  The trial court there told the defendant he had an absolute constitutional right to a jury trial, which meant " '12 individuals to make the factual determination . . . as to your guilt," and that the defendant said "[t]hat's been explained" and he repeatedly said he understood the right he was giving up.  (*Id*. at pp. 751-752, 754.)  Moreover, before the waiver hearing, there were discussions about jury selection and voir dire.  (*Id*. at p. 755.)  Although the defendant was self-represented  and therefore lacked the advice of counsel, " 'a self-represented  defendant may validly waive a jury trial without the guiding hand of counsel,' " and the

5

defendant showed some legal knowledge and had discussed waiving a jury with his attorney during the pretrial period when he was represented. (*Id.* at p. 756.) Although the defendant was not advised he could participate in jury selection, that the jury must be unanimous, and that a judge alone would decide his guilt and the appropriate penalty, the court concluded the waiver was not constitutionally infirm in the totality of the circumstances. (*Id.* at p. 759.)

The jury waiver here could likewise have been more robust. The trial court told defendant neither that he could participate in selecting a jury nor that the jury would have to reach its decision unanimously. But it *did* tell him he had a right to a jury, that the jury would consist of 12 members of the public, which would hear the evidence and rule on it, and that if he waived this right, the court would hear the evidence. When asked if he understood, defendant replied in the affirmative, and he said twice that the court would be the "judge and jury."

Although this discussion did not include all the elements mentioned in *Sivongxxay*, *supra*, 3 Cal.5th at p. 169, the surrounding circumstances show that the waiver was knowing and intelligent. It appears that defendant himself initiated the jury trial waiver. And he was no stranger to the criminal justice system, having suffered 20 prior convictions between 1992 and 2020. (Compare *People v. Blancett* (2017) 15 Cal.App.5th 1200, 1206 [in "barebones colloquy," mentally disordered offender (MDO) not told he had a right to jury trial at initial MDO commitment hearing]; *People v. Jones* (2018) 26 Cal.App.5th 420, 436-437 [no indication defendant knew jury was comprised of members of community, and defendant had no experience with criminal justice system].) While the record does not affirmatively show what previous advisements defendant may have received, his extensive criminal

6

justice history, which includes both felony and misdemeanor convictions, suggests he was familiar with the mechanics of a criminal prosecution.

Defendant also points out that he represented himself at trial and that he filed multiple motions betraying a lack of understanding of relevant facts and legal concepts. For instance, he argued that protections against double jeopardy barred enhancement allegations based on prior offenses, and he characterized a hearing inaccurately as an arraignment. But his lack of understanding of sophisticated legal concepts or the details of criminal procedure is hardly surprising in a layperson, and it does not suggest he did not understand the role of a jury. Indeed, whatever their legal merits, his motions show he was able to carry out basic legal research.

Defendant also points to the fact that the court later declared a doubt as to his competence to stand trial and to statements in the psychological evaluations, which were carried out after he waived his right to a jury trial. But, to the extent these later events are relevant to our analysis, it is noteworthy that defendant was evaluated by two mental health professionals after the court questioned his competence, one reporting that defendant had a good understanding of the legal process, and the other that he had an accurate appraisal of the functions of courtroom participants and an adequate understanding of court procedures.

Based on the colloquy and the totality of the circumstances of this case, we reject defendant's contention that his waiver of his right to a jury trial was not knowing, voluntary, and intelligent.

## DISPOSITION

The judgment is affirmed.

                              TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.












*People v. Badue* (A162813)








8